STARKWEATHER, by guardian *ad litem,* Respondent, vs. CHICAGO FIRE & MARINE INSURANCE COMPANY, Appellant.

*January 13—February 7, 1933.*

For the appellant there was a brief by *Julius O. Roehl,* and oral argument by *Harry G. Slater,* both of Milwaukee.

For the respondent there was a brief by *La Follette, Rogers & Roberts,* attorneys, and *W. Wade Boardman* of

counsel, all of Madison, and oral argument by *Mr. Glenn D. Roberts* and *Mr. Boardman.*

NELSON, J. This action is a companion case to *George J. Leonhard, Jr. et al. against the Chicago Fire & Marine Insurance Company,* a corporation, *ante,* p. 578, 246 N. W. 697. This action was consolidated with the *Leonhard Case* for purposes of trial and of appeal. The facts stated in the *Leonhard Case* up to the point of subscribing for new stock are the same and need not be repeated here.

At the time the company offered to its old stockholders the right to subscribe for new stock, one Rudolph Grabbert, of the city of Madison, was the owner of at least fifty shares of the old stock. Under the subscription rights offered he was entitled to subscribe for one hundred shares of the new stock proposed to be issued. Mr. Grabbert did not care to subscribe for new stock. F. W. Starkweather, the father of the plaintiff, was, however, anxious to subscribe for one hundred shares of the new stock and to hold it for the plaintiff, his daughter. Arrangements were made with Mr. Grabbert by Mr. Starkweather whereby the former exercised his right to subscribe for one hundred shares of the new stock. Thereafter Mr. Grabbert either sent in the blank or permitted Mr. Starkweather to send it in, accompanied by a remittance of $4,000 which Mr. Starkweather contributed. Upon receipt of the $4,000 the company sent out its so-called "Temporary Certificate—Exchangeable for Engraved Certificate When Ready for Delivery." The certificate recited that Mr. Grabbert was the owner of one hundred shares of "the full-paid and non-assessable capital stock" of the defendant company and that it was transferable on the books of the company. The Grabbert certificate was assigned to the plaintiff, surrendered to the company, and a new temporary certificate in the name of the plaintiff was substituted therefor, with the full knowledge of the

company that the $4,000 had been contributed by Mr. Starkweather. Some time thereafter, for the reasons mentioned in the *Leonhard Case,* the company decided not to proceed further with the matter of increasing its capital stock. It appears that nearly all of the subscribers for new stock were notified by the company of its abandonment of the attempt to increase its stock and that the company would refund the moneys contributed. However, the company refused to refund to the plaintiff the $4,000 which had been contributed by Mr. Starkweather, her father. Whether the company wrote a letter to the plaintiff similar to the one mentioned in the *Leonhard Case* does not appear. However, it did refuse to refund to the plaintiff. Shortly thereafter the matter of plaintiff's claim was placed in the hands of her attorneys, who wrote the company and demanded the refund. Their letter was evidently turned over to a firm of Chicago attorneys to answer. That firm wrote to plaintiff's attorneys and advanced the same reasons asserted by the company in its letter to the Leonhards for refusing to refund the moneys to the plaintiff. Considerable time was thereafter spent by plaintiff's attorneys in investigating the status of the company's affairs and the validity of its reasons for not refunding the money to the plaintiff. The commencement of this action was therefore delayed. On March 2, 1931, the plaintiff evidently giving more credit to the reasons and explanations of the company for not refunding the $4,000 than should have been accorded them, was apparently induced by the company to surrender her temporary certificate to it for the sum of $1,000. This action was thereafter commenced to recover the sum of $3,000, money had and received by the defendant.

We deem it unnecessary to repeat here the several contentions made by the company which were recited and discussed in the *Leonhard Case.* The defendant received $4,000 knowing that it was contributed by the plaintiff and

placed it in a special account where it was held in trust pending the successful completion of all of the arrangements necessary and preliminary to its being authorized to issue new stock. The company abandoned its plan to increase its stock. When it did so the company should have refunded all moneys contributed by subscribers. Instead of doing so it asserted specious reasons for holding on to the moneys contributed. The plaintiff, evidently relying upon such reasons, surrendered her temporary certificate to the company itself and received therefor the sum of only $1,000. The company evidently profited thereby to the extent of $3,000. We think the trial court was right in entering judgment in favor of the plaintiff for the sum of $3,000, money had and received by the company which in equity and good conscience it should pay to her.

*By the Court.*—Judgment affirmed.